**In re HIJACKING OF PAN AMERICAN WORLD AIRWAYS, INC. AIRCRAFT AT KARACHI INTERNATIONAL AIRPORT, PAKISTAN ON SEPTEMBER 5, 1986.**

**No. MDL–724 (JES).**

United States District Court,
S.D. New York.

Jan. 18, 1990.

See also 713 F.Supp. 1483.

Kreindler & Kreindler, New York City, Magana, Cathcart, McCarthy & Pierry and

Morgan, Wenzel & McNicholas, Los Angeles, Cal., for plaintiff's Steering Committee; Marc S. Moller and Steven R. Pounian, New York City, of counsel.

Windels, Marx, Davies & Ives, New York City, for defendants; James M. Shaughnessy, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Defendant, Pan American World Airways, Inc. ("Pan Am"), has moved pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment dismissing all claims seeking the imposition of punitive damages.[1] Pan Am claims that because Article 17 of the Warsaw Convention as supplemented by the Montreal Agreement[2] (collectively referred to as the "Convention") creates a cause of action for compensatory damages limited to $75,000,[3] any recovery of punitive damages is preempted by the Convention.[4] For the reasons set forth herein, the motion is denied.

## DISCUSSION

Notwithstanding some early prece-

---

1. These actions arise out of the hijacking of Pan Am Flight 73 from Bombay, India to New York's Kennedy Airport. At a scheduled stop in Karachi, Pakistan, four armed terrorists seized the aircraft. Twenty passengers were killed and a number of other passengers were injured during the course of the hijacking. Because of the international nature of Flight 73, all parties agree that the Convention applies to these actions.

2. The Warsaw Convention is officially entitled the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934). The American translation of the Convention ratified by the Senate is reprinted in a note following 49 U.S.C.App. § 1502. The official version of the Convention, however, is in French. See Air France v. Saks, 470 U.S. 392, 397, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985).

3. Article 22 as modified by the Montreal Agreement limits the amount of recovery for each passenger to $75,000.

4. Article 17 provides that:
    [t]he carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
Pan Am contends that the phrases "damages sustained" and "bodily injury" preclude an award of punitive damages citing, inter alia, Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1483–89 (11th Cir.1989).
Competing arguments have been made to the Court in the parties' briefs and at Oral Argument held on November 2, 1989 over the correct translation of the phrases "damages sustained" and "bodily injury" from French to English. See, e.g., Plaintiff's Memorandum of Law at 12–13. However, no expert testimony has been offered, and it would be improper, in the absence of such testimony, to speculate as to the correctness of the American translation. Cf. Rosman v. Trans World Airlines, Inc., 34 N.Y.2d 385, 392–93, 358 N.Y.S.2d 97, 103, 314 N.E.2d 848, 852 (1974) (under New York law receipt of testimony may be appropriate "to enable a court to arrive at an accurate translation"). In any event, the Court does not find that this language, even accepting the correctness of the translation, specifically precludes an award of punitive damages.

dent to the contrary,[5] it is now well-settled in this Circuit that the Convention creates a right of recovery for wrongful death and personal injury independent of the various actions created by the internal law of the signatory nations. *See Benjamins v. British European Airways*, 572 F.2d 913, 919 (2d Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). However, that remedy, whether it be contractual or tortious in nature, does not supersede other state common law remedies not preempted by the Convention. *See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 942 (2d Cir. 1980).[6]

▪ Punitive damages are a part of common law tort remedies, *see Racich v. Celotex Corp.*, 887 F.2d 393, 396 (2d Cir.1989), and no language in the Convention expressly preempts or precludes such claims, although consistent with Article 22, all damages, including punitive damages, cannot exceed $75,000. Nor may such preemption be implied in the absence of some clear indication in the text itself or its legislative history that supports that conclusion. *See Chan v. Korean Airlines, Ltd.*, — U.S. ——, 109 S.Ct. 1676, 1683–84, 104 L.Ed.2d 113 (1989).

Here, not only is there no such clear indication, but the language of the Convention leads to the opposite conclusion. Article 24(1) provides that "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." This language strongly suggests that the Convention contemplates state causes of action, including those for punitive damages, not founded in or created by the Convention. *See Tokio Marine, supra*, 617 F.2d at 942; *Reed v. Wiser*, 555 F.2d 1079, 1084–85 (2d Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977). Indeed, Article 24(2)

expressly states that the Convention applies "without prejudice to the questions as to who are the persons who have the right to bring suit and *what are their respective rights.*" (emphasis added).

This is especially true since the Convention leaves many issues to be governed by the internal law of the parties to the Convention. One such issue is the question of what items of damages are recoverable. *See Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir.1987); *Cohen v. Varig Airlines*, 62 A.D.2d 324, 334, 405 N.Y.S.2d 44, 49 (1st Dep't 1978). Furthermore, both the rules governing comparative negligence, *see* Article 21, and "[q]uestions of procedure" are controlled by local law. *See* Article 28(2).

Also lending support to this position is *Racich v. Celotex Corporation, supra*, 887 F.2d at 396, where the Second Circuit rejected an argument that a claim for punitive damages was not available unless specifically referred to in a state statute reviving asbestos related tort claims which would otherwise have been time-barred. The court stated that "[s]ince a common law tort action for personal injury by definition includes the element of damages, including punitive damages when factually appropriate, the omission in the revival statute and the legislative silence with respect to punitive damages do not preclude such a recovery." *Id.* (citations omitted).

▪ Even assuming that Article 17 did preclude the recovery of punitive damages, the Court finds that in any event the Convention would bar Pan Am's reliance on Article 17 in cases of wilful misconduct. Article 25(1) provides that:

[t]he carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if

---

**5.** *See Noel v. Linea Aeropostal Venezolana*, 247 F.2d 677 (2d Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957).

**6.** While there is some language in *Benjamins* which suggests that the remedy created by the Convention is exclusive, *see* 572 F.2d at 917–19, that language is *dicta*. The issue addressed in *Benjamins* was whether a district court had sub-

ject matter jurisdiction over Convention cases and not whether that remedy is exclusive. *Id.* at 916.

In *Tokio Marine, supra,* the Second Circuit squarely held that the remedy provided by the Convention is not exclusive. *See id.* at 941–42. This Court is therefore constrained to follow that holding.

the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the Court to which the case is submitted, is considered to be equivalent to wilful misconduct.

Therefore, to the extent that Article 17 is construed to preempt a claim for punitive damages, it would be a limitation or exclusion of liability within the meaning of Article 25, and such claims would not be barred in cases involving wilful misconduct.[7]

Pan Am, however, argues that the only provision excluding or limiting liability within the meaning of Article 25 is Article 22's monetary limit, and, therefore, the relevant portions of Article 17 remain intact. However, Pan Am's interpretation, if accepted, would require the Court to construe Article 25 as if it read "the provision, to wit Article 22, ... which limits *the amount* of his liability" which would constitute a judicial alteration of the plain language of the Convention foreclosed by *Chan, supra.* For this reason the Court cannot accept as persuasive the reasoning set forth by the Eleventh Circuit in *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1483–89 (11th Cir.1989), which was followed in *In re Air Disaster in Lockerbie, Scotland,* M.D.L. 799, 1990 WL 1672, 1990 WL 1673 (E.D. N.Y. January 3, 1990). Both of these cases rely heavily upon a judicially perceived need to construe the Convention in accordance with the intention of the Contracting Parties. However, this Court does not believe that *Chan* permits the Court to amend the plain language of the Convention to effectuate what it believes the Contracting Parties intended.

In this regard, it is significant to note that an amendment to Article 25 which has never been ratified by the Senate provides that: "[t]he limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier ... done with intent to cause damage or recklessly and with knowledge that damage would probably result." Hague Protocol Art. XIII, *reprinted in* Lowenfeld, *Aviation Law Documents Supp.* at 429. The fact that the Contracting Parties saw the need to amend Article 25 to achieve precisely the same result that Pan Am would have this Court achieve by judicial interpretation affords additional support for the conclusion that the policy considerations underlying *Chan* preclude a judicial amendment of Article 25. This is especially true since the United States has refused to adopt that amendment. *Cf. Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 260–61, 104 S.Ct. 1776, 1786–87, 80 L.Ed.2d 273 (1983) (courts should not imply repeal of Convention provisions).

Accordingly, Pan Am's motion for partial summary judgment is denied.

It is SO ORDERED.

---

7. The standards for wilful misconduct under the Convention and the conduct necessary for the recovery of punitive damages under common law are virtually identical. Wilful misconduct under the Convention requires either "the intentional performance of an act with knowledge that the performance of that act will probably result in injury" or "the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences." *See Republic Nat'l Bank v. Eastern Airlines, Inc.,* 815 F.2d 232, 238–39 (2d Cir.1987) (quoting *Pekelis v. Transcontinental & Western Air, Inc.,* 187 F.2d 122, 124 (2d Cir.), *cert. denied,* 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951)).

The standard to be met for a common law claim for punitive damages is also wilfulness or a reckless disregard of plaintiff's rights. *See, e.g., Welch v. Mr. Christmas Inc.,* 57 N.Y.2d 143, 150, 454 N.Y.S.2d 971, 975, 440 N.E.2d 1317, 1321 (1988) ("recovery of punitive damages in a common law action requires a showing of a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard"); *Hughes v. Blue Cross,* 215 Cal.App.3d 832, 263 Cal.Rptr. 850, 858 (1989) (punitive damages may be predicated on "intent to harm or a conscious disregard of another's rights").