*Comolli et al. v. Huntington Learning Centers, Inc. et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 16th day of March, two thousand seventeen.

Present:     ROBERT A. KATZMANN,
                         *Chief Judge*,
                 ROSEMARY S. POOLER,
                 GERARD E. LYNCH,
                         *Circuit Judges*.

_____

DINA ANN COMOLLI, CHRISTINE HOLLIDAY,
SANDRA WILLIAMS,

                         *Plaintiffs-Appellants*,

                 v.                                                No. 16-1486

HUNTINGTON LEARNING CENTERS, INC.,
HUNTINGTON LEARNING CORPORATION,
HUNTINGTON MARK, LLC, HUNTINGTON
ADVERTISING FUND, INC., NEW YORK ADI COOP
CORP.,

                         *Defendants-Appellees*.

_____

For Plaintiffs-Appellants:          RHETT O. MILLSAPS II, Law Office of Rhett O. Millsaps II, New York, NY.

For Defendants-Appellees
Huntington Learning

Centers, Inc., Huntington
Learning Corporation,
Huntington Mark, LLC,
New York ADI Coop Corp.:  E. KING POOR (Andrew P. Beilfuss and Paul D. Bauer, *on the brief*), Quarles & Brady LLP, Chicago, IL; Phillip Bauknight, Fisher & Phillips LLP, Murray Hill, NJ (*on the brief*).

For Defendant-Appellee
Huntington Advertising
Fund, Inc.:  David A. Piedra, Morrison Cohen LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Scheindlin, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Dina Ann Comolli, Christine Holliday, and Sandra Williams appeal from the district court's grant of summary judgment in favor of the defendants on the plaintiffs' claims for invasion of privacy under § 51 of the New York Civil Rights Law. For the reasons discussed herein, we AFFIRM the judgment of the district court. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

Defendants-Appellees Huntington Learning Centers, Inc., Huntington Learning Corporation, Huntington Mark, LLC, Huntington Advertising Fund, Inc., and New York ADI Coop Corp. (collectively, "Huntington") are a group of related entities that operate and franchise children's learning centers across the United States. In December 2011, the plaintiffs acted in a television commercial advertising Huntington's services that Huntington ultimately broadcast extensively. On the day of the shoot, the plaintiffs filled out the personal releases that are the subject of this appeal. The releases are formatted as business letters: they open with the salutation "Ladies and Gentlemen," contain three paragraphs of body text categorically

2

consenting to, *inter alia*, the use of the releasor's likeness and recorded voice, and conclude with the valediction or complimentary close, "Very Truly yours." App. 25, 32, 40. Directly below the valediction is a line, underneath which appears the instruction, "(print name clearly)." Below this line are three additional lines, which call for the releasor's address and phone number. Further below these lines but flush left is yet another line (which we will refer to for the sake of clarity as the "Disputed Signature Line"), underneath which appears the instruction, "If signatory is under 21, the parent or guardian must also sign above to signify agreement."

When the defendants initially proved unable to produce the releases (which the plaintiffs did not recall seeing or signing), the plaintiffs sued them for using the plaintiffs' images and voices without their written consent, in violation of § 51 of the New York Civil Rights Law. Eventually, the defendants did locate and produce the releases, the authenticity of which the plaintiffs do not now dispute. As it turned out, Comolli and Williams had printed their names as instructed under "Very Truly yours," while leaving the Disputed Signature Line blank. Holliday had both printed her name under "Very Truly yours" and signed the Disputed Signature Line. Nevertheless, Comolli and Williams maintain that they did not intend to execute the releases and that the defendants acted without their written consent. And Holliday maintains that she may recover if Williams did not execute the release because, in light of Williams' subsequent membership in the SAG-AFTRA union, the defendants would have been required to "unionize" the commercial by renegotiating terms with all three plaintiffs.

"We review a grant of summary judgment *de novo*[,] . . . view[ing] the facts in the light most favorable to the non-moving party and resolv[ing] all factual ambiguities in its favor." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). For summary judgment to be warranted, the movant must "show[] that there is no genuine dispute as to any material fact and

3

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola*, 499 F.3d at 148 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Section 50 of the New York Civil Rights Law makes it a misdemeanor to "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person *without having first obtained the written consent of such person*, or if a minor of his or her parent or guardian." N.Y. Civ. Rights Law § 50 (emphasis added). Section 51, in turn, confers a private right of action on those aggrieved by a violation of § 50. *See* N.Y. Civ. Rights Law § 51. While a written contract need not exist to establish written consent, *see Cory v. Nintendo of Am., Inc.*, 592 N.Y.S.2d 6, 8 (1st Dep't 1993), it certainly suffices to do so. And under well-settled New York law, "the existence of a binding contract is not dependent on the subjective intent" of any party, but upon the "objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp.*, 41 N.Y.2d 397, 399 (1977); *see also Warmhold v. Zagarino*, 40 N.Y.S.3d 499, 500 (2d Dep't 2016) ("A release is a contract, and its construction is governed by contract law." (internal quotation marks omitted)).

We hold that the releases at issue here are valid and binding contracts that constitute written consent to the use of each plaintiff's likeness in the commercial. In particular, given the structure of the releases, Comolli and Williams, in printing their names below the "Very Truly yours" valediction, "objective[ly] manifest[ed]" their intent to be bound. *Brown Bros. Elec. Contractors*, 41 N.Y.2d at 399. Whatever the meaning of the Disputed Signature Line, it would

4

be unreasonable for a person printing her name below the valediction to believe that she was not agreeing to the substance of the release. Moreover, Comolli and Williams participated in the commercial, invoiced the producer for their work, and cashed checks in the amount of $500 without reservation, all of which constitutes further objective evidence of their intent to be bound. No reasonable jury could find otherwise.

The plaintiffs point to various factual circumstances and fragments of testimony in an attempt to establish a genuine dispute of fact as to their intent to execute the releases. Even to the extent such evidence may be considered "objective manifestations" of intent, it is unpersuasive. *Id.* For example, the plaintiffs cite their purported expert's testimony that he has "never known an actor to give . . . consent [to use a television commercial in which the actor appears] solely by printing her name and contact information on a release." App. 266. But this testimony fails to grapple with the formatting of the releases at issue as business letters and the placement of the plaintiffs' printed names below the valediction. The plaintiffs also ask the Court to draw various inferences in their favor based on the manner in which the releases were stored and based on testimony that the shoot was disorganized. But those inferences, while not entirely outside the realm of possibility, are too speculative and unsubstantiated to defeat summary judgment. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (noting that to defeat a motion for summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation" (internal quotation mark omitted)); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) ("[A] party [may not] rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Indeed, the version of events that the plaintiffs contend a reasonable jury could have credited — that the producers of

the commercial had Comolli and Williams fill out the releases without reading them, took back the releases, and then forgot to have Comolli and Williams read and execute the forms — is premised on admitted "conjecture." Pls.' Br. 31. As such, the defendants were properly granted summary judgment.

Finally, because Holliday's theory of recovery is premised on the rejected contention that Williams did not provide written consent to the use of Williams' own likeness, we need not reach Holliday's argument.

We have considered the plaintiffs' remaining arguments on this appeal and find in them no basis for reversal. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
