**Gary M. CAPPETTA, Plaintiff,**

v.

**Marshall E. LIPPMAN and Marshall E. Lippman, P.C., Defendants.**

**No. 93 Civ. 0072 (DAB).**

United States District Court,
S.D. New York.

Feb. 6, 1996.

Andrew P. Davis, Davis & Davis, New York City, for plaintiff.

Richard L. Gold, Sylvor, Schneer, Gold & Morelli, New York City, for defendants.

## MEMORANDUM and ORDER

BATTS, District Judge.

Plaintiff Gary M. Cappetta ("Plaintiff") objects to an April 24, 1995, Report and Recommendation ("Report") of Magistrate Judge Michael H. Dolinger ordering Defendant Marshall E. Lippman, P.C. ("Defendant") to pay Cappetta $3,515.56 in damages for attorney malpractice. Defendant has submitted papers opposing Plaintiff's Objections but has not submitted any of its own Objections to the Report. Plaintiff's Objections are considered below.

### I. BACKGROUND

Plaintiff worked as a professional wrestling announcer for Titan between 1974 and 1985. (Report at 3.) After leaving Titan, he learned that Titan had been selling videotapes of wrestling events that included his performance as ring announcer. (Report at 3–4.) He retained Defendant to bring suit against Titan and the video company in December 1987, alleging that Titan had used his image, in violation of section 51 of the New York Civil Rights Law. (Report at 4.)

The lawsuit against Titan was eventually dismissed by the Hon. Robert P. Patterson, after Defendant failed to appear on behalf of Plaintiff at pre-trial motion hearings and conferences, and did not file responses to Titan's motions. (Report at 5.) Furthermore, Defendant did not even tell Plaintiff that his case was dismissed. (Report at 5.) In an attempt to save his lawsuit, Plaintiff hired the firm Lowenstein, Sandler, Kohl, Fisher & Boylan to move to vacate the dismissal. (Report at 5.) This attempt was unsuccessful. (Report at 5.)

The lawsuit at issue here was commenced on December 18, 1992. (Report at 2.) Lippman and Lippman, P.C. both failed to answer or respond to the Complaint, and the District Court granted a Default Judgment against the two defendants. (Report at 2.) The District Court referred the case to Judge Dolinger for a post-default inquest as to damages. (Report at 2.) Before the inquest was held, the District Court vacated the Default against Lippman personally and dismissed the action against him. However, the

Default against Defendant remained. (Report at 2.)

Judge Dolinger held an inquest on August 9–10, 1994. (Report at 3.) After hearing testimony from both sides, Judge Dolinger issued a Report finding Defendant not liable for any damages from the underlying action against Titan, nor for any punitive damages for attorney malpractice. Judge Dolinger did, however, find Defendant liable for $3,515.56 in damages to Plaintiff for hiring a new firm to attempt to re-open the underlying action. Pursuant to Fed.R.Civ.P. 72, the parties had 10 days to object to this Report. Plaintiff filed six Objections; Defendant filed only a response to the Objections. The Court is now called upon to assess the validity of Plaintiff's Objections.

## II. DISCUSSION

### A. Standard of Review

■ A district court assessing a magistrate judge's findings of fact and recommendations for disposition shall make a "de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(B)–(C); *accord* Fed.R.Civ.P. 72(b). In this context, "de novo determination" means that the district court must review the magistrate's findings and determine whether "reliance should be placed on those findings; the reviewing court is not required to rehear testimony adduced at the magistrate's inquest." *Felice Fedder Oriental Art, Inc. v. Scanlon,* 708 F.Supp. 551, 552 (S.D.N.Y.1989) (citing *United States v. Raddatz,* 447 U.S. 667, 671–77, 100 S.Ct. 2406, 2410–13, 65 L.Ed.2d 424 (1980)).

### B. Burden of Proof

■ A party's default in an action is a concession of liability, but is not a concession of damages. *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974). Damages must be proved by the plaintiff in a post-default inquest. *Id.; Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

*Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Gonzalez v. Rakkas,* No. 93–CV–3229, 1995 WL 451034, at *3 (E.D.N.Y. July 25, 1995). Thus, Defendant's default at the district court level conceded liability. At the inquest before Judge Dolinger, however, Plaintiff had the burden of proving damages.

### C. Plaintiff's Objections

Plaintiff does not object to Judge Dolinger's choice of law or statute of limitations analysis.[1] Plaintiff objects, though, to each part of Judge Dolinger's damages analysis.

### 1) Economic Damages

Plaintiff objects to Judge Dolinger's determination that Plaintiff was not entitled to damages in the present case because he failed to prove he was entitled to economic damages in the underlying case against Titan. Plaintiff also objects to Magistrate Judge Dolinger's use of the "reasonable certainty" standard. After reviewing the meticulous and exhaustive analysis of these issues as set forth in the Report, the Court accepts the Recommendations set forth in the Report on these questions.

Judge Dolinger's thorough analysis of the facts and law used a "reasonable certainty" standard to assess Plaintiff's evidence. (Report at 18.) This standard has a firm foundation in law. *See Proteus Books Ltd. v. Cherry Lane Music Co.,* 873 F.2d 502, 510 (2d Cir.1989) (citing *Kenford Co. v. Erie County,* 67 N.Y.2d 257, 502 N.Y.S.2d 131, 133, 493 N.E.2d 234, 236 (1986)). While Plaintiff is correct that courts have "recognized that objective standards for measuring damages under § 51 of the Civil Rights Law are 'unlikely to be available,' " (Pl.'s Obj.'s to the Report at 5), the standard used by Judge Dolinger incorporates this inherent uncertainty into what is thus considered "reasonable." *See Felice Fedder Oriental Art, Inc.*

---

1. As to the choice of law, Judge Dolinger correctly determined that New York law applies. (Report at 9–12.) As to the statute of limitations, he determined that it did not foreclose bringing this action, because Plaintiff might have been able to rebut the statute of limitations defense. (Report at 12–16.) While the Plaintiff failed to put forth, either in his initial moving papers or in his Objections, how he might have done so, the Court agrees that this is a possibility, unaddressed by the parties as it is.

*v. Scanlon,* 708 F.Supp. 551, 558 (S.D.N.Y. 1989). In fact, Judge Dolinger noted this uncertainty in his Report. (Report at 25.)

 Because of this uncertainty, this determination is one that is left to the sound discretion of the trier of fact. *Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 512 (2d Cir.1977); *Manger v. Kree Institute of Electrolysis,* 233 F.2d 5, 9 n. 5 (2d Cir.1956). Upon review by the Court, Judge Dolinger's thorough analysis of the evidence offered by Plaintiff is correct. Plaintiff did not prove anything by offering the evidence of only one so-called expert—a certified public accountant who had no experience with the wrestling business. With the burden of proof on the Plaintiff to establish damages and provide some reasonable basis to quantify them, the only conclusion to draw from the Plaintiff's expert's testimony is that there were no economic damages proven, ascertainable or otherwise, from Titan's actions.

2) Emotional Damages

 Plaintiff also objects to Judge Dolinger's finding that he was entitled to no damages for emotional injury. Again, after reviewing the Report, the Court holds that Judge Dolinger's analysis is correct and accepts his Recommendation on this issue.

As noted above, Plaintiff has the burden of proving damages. However, at the inquest, the evidence of Plaintiff's alleged emotional injury was his bald statement that he was angry and distressed. (Tr. at 106.) This mere statement of injury does not rise to the level of proof required in the cases cited in the Report. (Report at 28–30.) Plaintiff offered no evidence to support his assertion, and thus did not meet the burden of proof on this issue.

3) Punitive Damages in the Dismissed Action

Plaintiff further objects to Judge Dolinger's finding that he was entitled to no punitive damages in his underlying case against Titan, and therefore entitled to none in his legal malpractice inquest. Plaintiff also objects to the standard used by Judge Dolinger in his determination. Because Judge Dolinger used the incorrect standard in assessing Plaintiff's evidence, the Court rejects this portion of Judge Dolinger's Report and enters its own finding that Plaintiff would have been entitled to punitive damages from Titan, had the underlying case not been dismissed. However, the Court finds, in agreement with Judge Dolinger, that the Defendant is not liable for the punitive damages that might have been found against Titan.

 Judge Dolinger used an "intentional or wanton misconduct" standard to assess Plaintiff's punitive damages claim. (Report at 31.) This standard is the correct standard for tort actions arising under common law. *See Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 513 (2d Cir.1977). This standard is not, however, the correct standard for actions arising under section 51 of the Civil Rights Law of New York. The Legislature can authorize different criteria for the award of punitive damages other than what the common law provides. *Welch v. Mr. Christmas Inc.,* 57 N.Y.2d 143, 454 N.Y.S.2d 971, 975, 440 N.E.2d 1317, 1321 (1982); *Big Seven,* 554 F.2d at 512. The Legislature has done just that in section 51: "for recovery of [punitive] damages under the statute, therefore, no more need be shown than *knowing use.*" *Welch,* 454 N.Y.S.2d at 975, 440 N.E.2d at 1321 (emphasis added).

This "knowing use" standard has been followed by New York courts in applying section 51 to punitive damages claims.[2] *See, e.g., Beverley v. Choices Women's Med. Ctr., Inc.,* 170 A.D.2d 475, 565 N.Y.S.2d 833, 834 (2d Dep't 1991) (affirming "the award of punitive damages, since [defendant] knowingly published the plaintiff's picture in the calendar without her consent"); *Caesar v. Chemical Bank,* 118 Misc.2d 118, 460 N.Y.S.2d 235, 237 (1983), *aff'd,* 106 A.D.2d 353, 483 N.Y.S.2d 16 (1st Dep't 1984), *aff'd,* 66 N.Y.2d 698, 496 N.Y.S.2d 418, 487 N.E.2d 275 (1985) ("punitive damages can be awarded upon proof that defendant knowingly used the pho-

---

**2.** The two cases cited by Judge Dolinger do not support his use of the stricter standard. *Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 513 (2d Cir.1977), was decided before the New York Court of Appeals' ruling in *Welch,* and *Gallon v. Hustler Magazine Inc.,* 732 F.Supp. 322 (N.D.N.Y.1990), does not even address it. *See id.* at 327.

tographs"); *Myers v. U.S. Camera Publishing Corp.*, 9 Misc.2d 765, 167 N.Y.S.2d 771 (1957); *see also Lerman v. Chuckleberry Publishing, Inc.*, 496 F.Supp. 1105, 1109–10 (S.D.N.Y.1980).

 Thus, were punitive damages from Titan before this Court, under the "knowing use" standard, Plaintiff sufficiently proved that Titan knowingly used his image in its videotapes.[3] Evidence to support this knowing use is found in Titan's having offered Plaintiff a release that he did not sign and his actual appearance in eleven videos. (Tr. at 86–7.) Thus, Titan would be liable to Plaintiff for punitive damages.[4]

 However, this does not necessarily translate into the Defendant herein being held vicariously liable for the punitive damages that would have been awarded against Titan. Although generally a defendant attorney is liable to the plaintiff for the claim he would have recovered in the dismissed suit, (*Campagnola v. Mulholland, Minion & Roe,* 76 N.Y.2d 38, 556 N.Y.S.2d 239, 555 N.E.2d 611 (1990)), the Court finds that punitive damages are not included in this general claim theory. The purpose of punitive damages is to punish the defendant, in this case Titan. *Big Seven,* 554 F.2d at 513 ("nor was there any finding that the punitive damages award would punish" the defendant); *Hartford Accident and Indemnity Co. v. Village of Hempstead,* 48 N.Y.2d 218, 226, 422 N.Y.S.2d 47, 52, 397 N.E.2d 737, 742 (1979) ("the purpose of punitive damages ... is to punish and to deter others from acting simi-

larly"); *Walker v. Sheldon,* 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961) (same); *Roberts v. Conde Nast Publications,* 286 App.Div. 729, 146 N.Y.S.2d 493 (1st Dep't 1955) ("pay damages as a warning to others and as punishment to itself"). Furthermore, the purpose is not to compensate plaintiffs. Hence, if the purpose of punitive damages in the dismissed action was to punish Titan, it is illogical to hold Defendant liable for those damages. Having Defendant pay punitive damages would not deter future violations of § 51 by Titan. Hence, the Court agrees with Judge Dolinger that no derivative punitive damages should be awarded in this instance.

### 4) Punitive Damages for Attorney Malpractice

Plaintiff finally objects to Judge Dolinger's refusal to award any punitive damages against Defendant for attorney malpractice. Judge Dolinger used the appropriate standard of review here in ruling that Plaintiff should not be awarded punitive damages.

 The cases cited by Judge Dolinger support the conclusion that Plaintiff is not entitled to punitive damages. New York State law provides that punitive damages are not recoverable for an ordinary breach of contract. *Rocanova v. Equitable Life Assur. Soc.,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342, 634 N.E.2d 940, 943 (1994). However where a cause of action involves fraud[5] or a breach of contract, punitive damages may be awarded if the defendant's conduct " 'was so outrageous as to evince a high degree of

---

**3.** The award of punitive damages is discretionary. *Manger v. Kree Institute of Electrolysis,* 233 F.2d 5 (2d Cir.1956) (damages in § 51 action under discretion of trier of fact); *Roberts v. Conde Nast Publications,* 286 App.Div. 729, 146 N.Y.S.2d 493 (1st Dep't 1955) (same).

**4.** In this action under the Civil Rights Law, Plaintiff can recover punitive damages even though there is no award of compensatory damages. *See Rosenberg v. Lee's Carpet & Furniture Warehouse Outlet, Inc.,* 80 Misc.2d 479, 363 N.Y.S.2d 231, 234–35 (1974); *Kent v. City of Buffalo,* 61 Misc.2d 142, 304 N.Y.S.2d 949, 950–52 (1969), *aff'd on other ground,* 36 A.D.2d 85, 319 N.Y.S.2d 305 (4th Dep't), *rev'd on other ground,* 29 N.Y.2d 818, 327 N.Y.S.2d 653, 277 N.E.2d 669 (1971); *cf. King v. Macri,* 993 F.2d 294, 297 (2d Cir.1993) (under 42 U.S.C. § 1983).

**5.** In cases involving fraud by the attorney, and not mere breach of contract, punitive damages have been awarded in the following instances: *See Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 371–72 (2d Cir.1988) (attorney made repeated misrepresentations to his client causing him to enter into an agreement); *Green v. Leibowitz,* 118 A.D.2d 756, 500 N.Y.S.2d 146, 149 (2d Dep't 1986) (stating that punitive damages are recoverable for fraud where abuse of professional status is involved); *Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66, 67–68 (4th Dep't 1978) (attorney made repeated misrepresentations to client's creditor, the plaintiff, to its detriment). Despite Defendant's irresponsibility and inexcusable conduct here, it has not engaged in fraud; thus, these standards do not apply.

moral turpitude and showing such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Walker v. Stroh,* 192 A.D.2d 775, 596 N.Y.S.2d 213, 214 (3d Dep't 1993) (citing *Zarin v. Reid & Priest,* 184 A.D.2d 385, 585 N.Y.S.2d 379, 382 (1st Dep't 1992) (citing *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961))); *Rocanova,* 83 N.Y.2d at 613, 612 N.Y.S.2d at 342, 634 N.E.2d at 943; *Lavanant v. General Accident Ins. Co. of Am.,* 212 A.D.2d 450, 622 N.Y.S.2d 726, 727 (1st Dep't 1995). Although Defendant surely acted in blatant disregard of its contractual obligations to Plaintiff, Defendant did not act in a criminally indifferent manner.[6]

The Court thus concludes that Judge Dolinger correctly ruled that Plaintiff was not entitled to punitive damages. While other avenues and remedies may be appropriate and available to Plaintiff to address the clear injury suffered by Defendant's omissions and misdeeds, punitive damages is not one of them.

### III. CONCLUSION

Accordingly, the Recommendations in the Magistrate's Report are accepted and adopted by the Court. Plaintiff is thus awarded a total of $3,515.56, plus prejudgment interest as found in the Report.

SO ORDERED.

---

**6.** Defendant's conduct was noted by Judge Dolinger in his report:

> The testimony by plaintiff, which I find to be entirely credible in this respect, reflects remarkable carelessness and inattentiveness by Lippman. He entirely failed to carry out his responsibilities to his client by not pursuing the claims that he had undertaken to assert, he failed to appear for required conferences or to respond to crucial motions, and he failed to advise his client of developments in the case, even when plaintiff persistently inquired. Moreover, the excuses proffered by Lippman are entirely threadbare.

(Report at 34.)